How much law can a human body ignore and misinterpret, and how many facts can they ignore and misinterpret? and still render a fair and constitutionally valid decision? Alex Tiu came to this country on December 18th of 1981. He came on a visitor's visa. On December 21st of 1981, less than a week later, he set out and began to investigate for a change of status to a student visa. He went to a school. He applied for an I-20. He filled out financial applications. The Foreign Affairs Manual is very clear that if someone enters the country on a particular visa and begins to do something to change their status within 30 days of that entry, there is a presumption that they committed fraud in obtaining their original visa. Alex Tiu started to change his visa in less than a week. Having entered fraudulently, he was in illegal status because his visa was illegally issued. On January 1st of 1982, he was in illegal status. The school had the authority to grant I-20s, which would allow the student to apply for a change of status to a student visa. In the meantime, the immigration service was under regulations. It was under certain specific requirements to report to the immigration service. The problem is that all this was in front of the I.J., and the I.J. sifted and sorted through the evidence of his presence and what he did with respect to the school and employment and all the stuff that he hadn't filed taxes, hadn't really gone through with the ‑‑ carried through with the school and blah, blah, blah, blah, blah, all of which is a discretionary call, which we have no jurisdiction to review. With all due respect, Your Honor, the issue of whether or not Mr. Tiu entered illegally or whether or not he had committed fraud was not before the immigration judge. No, no. I'm saying ‑‑ I'm saying all of his conduct, what he did after he came into this country was in the mix. And the ‑‑ and the ‑‑ we have no jurisdiction to review discretionary calls on adjustment of status. And so why ‑‑ what is it that makes this different and therefore gives us jurisdiction? First of all, I will repeat that. This issue was not before the immigration judge because when he was ‑‑ when Mr. Tiu was before the immigration judge, the law of amnesty didn't exist. So none of the ‑‑ so the law of amnesty was not ever applied to the facts here. I understand that. What was the ‑‑ the charge of deportability was just overstaying his visitor's visa? In front of the immigration judge originally? Yes. Yes, it was, Your Honor. Okay. There were other issues that were raised, but he was originally brought before the immigration court for having overstayed his visa. To get back to your question, what gives this court the jurisdiction to look at all of this is the fact that the bodies that did in fact have the responsibility to apply the law, the bodies that were supposed to review all of the law and apply it correctly to the facts, didn't do it. Okay. Let me ask you an entirely different question. I understand that because someone self‑deports, self‑executes in order of deportation, does not affect the liveliness of the controversy with respect to the order of deportation. But that isn't what we have here. What we have here is action with respect to adjustment of status. What are the collateral consequences of that decision? Because it has nothing to do with his deportation. It does, again, Your Honor. Okay. How? His adjustment of status is based upon ‑‑ or his ability to adjust his status would be based upon the granting of amnesty, which is what this is all about. The ‑‑ But what's the collateral consequence? He's already got the deportation order, which isn't at issue. The collateral issue is that if in fact he were granted amnesty, the deportation order would be moot and he would be allowed to be in this country. Well, that's a good consequence. But what's a bad collateral consequence that gives us jurisdiction over this one when he is not in custody on account of this decision? The negative consequence is that he was forced to leave the country if he could. No, no, no. Not on account of this decision. Well, yes, Your Honor. No, because he was under an order of deportation and decided to split. Well, not exactly. Not exactly. He had an order of deportation. Yes. You're correct. However, had the amnesty been granted, that order would have become moot. Correct. He then faced the fact that his ‑‑ that the order existed. It was still in force, in effect. There was a bag and baggage letter that was issued telling him that they were going to pick him up. There was a ‑‑ and therefore, either he left on his own or they were going to physically put him out of the country. The fact that he is out of the country means that he can't come back in because if he does, the order of deportation is reinstated. And nothing he'll do here will have any effect at all on the order of deportation which exists. Except that if, in fact, he had been properly granted amnesty, that order of deportation wouldn't exist anymore. Okay. And that's the point. Okay. He also faces a 10‑year bar from reentering the country because of the fact that he was here illegally for a year or more. Okay. So those are all quite negative impacts. The problem we hear, of course, is arising on habeas and we look for he's in custody at the time he files his petition. I think it's clear that he was in custody. He was in constructive custody at the time that he filed his petition. And then the question would be did his departure, when there's an existing deportation order, render moot his habeas petition? And that seems to me is where the question of the adverse consequences comes up. I presume your answer is it's not moot because he can't come back in. It is not moot because he can't come back in. And I think if you look at Cigar Gomez, it says clearly that it's not moot. If someone has a pending habeas at the time that they have a deportation order, they file habeas, they then leave the habeas. There's no question about that. Your Honor, do you have any case that doesn't pertain to a deportation, a habeas that pertains to a deportation order? Cigar Gomez did pertain to a deportation order. I know, but this doesn't. Is there any case that doesn't pertain to a deportation order? No, Your Honor, I don't. Okay. I don't believe there is one. Even if we gave you the benefit of the, and of course I can't speak for the panel, but our jurisdiction in habeas is pretty restricted. We look for the violation of a constitutional provision or a statute or something, and I'm not sure we have that here. I think we do because of the fact that, as I said in the beginning, when you have a reviewing body that ignores the law, that misapplies the law, you are left with a decision that is fundamentally unfair. But that goes to the merits of the decision, doesn't it, rather than the structure? I guess what I mean by that is if we have all these cases that say, for example, that you can't get around the jurisdictional bar by simply alleging that something happened that was fundamentally wrong in due process, but then saying that the BIA misapplied precedent, et cetera. What makes this case different from all those cases? I mean, basically your argument, as I understand it, is they should have thrown him out earlier because it was a fraudulent entry in spite of the law in one sense. If they had done that before the laws of amnesty were passed, then they would have had the right to do that, I agree with you. Sure. So what makes it a legal error that entitles you to habeas relief, the fact that they didn't exercise their prosecutorial discretion to act earlier? Because once the law changed, they were obligated to obey and to follow the law as it then existed, and they were obligated to follow the laws of amnesty, and they didn't do that. What they disagreed with you about was whether the government ever knew of his attempt within a week of entry to change his status, which is what renders his stay illegal as of that early date. And they say, well, you know, he went to school and he applied and he talked to the school, but the school wasn't the government. The government had no knowledge of his attempt to change status. And that's the decision you're disagreeing with. And does that violate a statute or a constitution? Well, Your Honors, the question there is whether or not the school was in fact an agent of the government, because if the school knew and it was an agent, then the government knew. And that is what I'm disagreeing with, because they didn't even look at that issue. Okay. All right. Thank you. Go to the government. Good morning. May it please the Court. I'm Assistant United States Attorney Robin Lazzarone. I represent the respondents' appellees. Petitioner is taking two different events, each with its own distinct legal consequences, and trying to combine them, to merge them for the purpose of this lawsuit. On the one hand, we have the final order of deportation. Now, removal, which was entered back in 1985. That decision gave the Immigration and Naturalization Service, the INS, constructive courtesy, excuse me, constructive custody over the petitioner. That constructive custody later transferred to the new entity, the Bureau of Immigration and Customs Enforcement, or ICE. That custody, that constructive custody, has remained the same from 1985 until the petitioner moved to Canada. The final order of removal, together with the fact that the petitioner had been in the country illegally for more than a year, is what creates the 10-year bar for readmission. The final order of removal was affirmed back in 1988. The petitioner had the ability to appeal that decision to the Circuit Court of Appeals. He didn't do so. He also did not, then or now, file a petition for writ of habeas corpus attacking that final order of removal. That final order of removal, as the decision that gave the government custody over the petitioner, is the only thing that can be attacked through the petition for writ of habeas corpus. What the petitioner is now trying to attack is a totally separate decision, the 2002 decision on the application for adjustment of status or amnesty. That is the decision as an application for benefits that would currently be under the authority of a different agency, the Bureau of Citizen and Immigration Services. That decision did not change in any way the custody that the government had over the petitioner. It did not create the 10-year bar, and it didn't have any collateral consequences that are at issue in this case. It didn't moot, didn't change, and by itself couldn't moot or change the decision of the final order of removal. Congress has not granted the courts any authority to review the denial of an application for adjustment of status or amnesty under Section 1255A, except in the context of a final order of removal. Here we do not have review of an application for amnesty in the context of a final order of removal. Therefore, there is no jurisdiction. The petitioner tries to get around that by using a petition for writ of habeas corpus, but he is not attacking the order that gives constructive custody. He is instead attacking a different order with completely different legal consequences. The purpose of the writ of habeas corpus is to look and see whether the government has unlawful custody over someone. That isn't changed by the decision on the application for adjustment of status. In fact, even if the petitioner were to prevail on his argument that he was in the country illegally by January 1st, 1980, that wouldn't moot the final order of removal. Even if he won that legal argument, he still would have to come over, overcome other legal bars, such as the fact that he has been rendered excludable by having been found to have committed visa fraud in conjunction with his first marriage and his first application for adjustment of status. What we're looking at here is one thing. That is the decision in 2002 on the adjustment of status. The petitioner has not met his burden of showing that this court should overturn the finding of the district court, that there was no subject matter jurisdiction to review that decision. Could you challenge a custody on the ground? Let's just take another kind of habeas. Let's say you're in prison or something. Can you challenge custody on the ground that the governor has granted you a pardon? I'm sorry, Your Honor. Well, I'm just you're saying that there's no way you can challenge the custody that follows from the deportation order by way of a claim that your status should have been adjusted. Correct, Your Honor. And yet the adjustment of status would end the custody, presumably. It could. It would not necessarily do so. Right. But why does it not enough for jurisdiction? Because normally in a, let's take in the prison habeas context, there isn't necessarily a requirement there would be a nexus between the order that created the custody and the requirement under 2241 or any of the other relevant habeas statutes that the person is in custody. So why is this different? Because we're talking about the general habeas statute here, 2241. Because, Your Honor, even if he prevailed in his argument that he was entitled to amnesty because he was in this country illegally before 1982, it would not show that the custody was unlawful. He would still be in the lawful custody of the United States government because of the final order of deportation. That custody would remain lawful unless and until he went through all of the various legal applications, maneuverings, and obtained all of the legal decisions to overturn that final order of removal, which is the one thing he has not done nor has he attempted to do. I know this is not essential to your argument, but as a matter of curiosity, does a final order of deportation interrupt the period of time that the amnesty requires? Amnesty requires a certain how many years of illegal status in this country? No, Your Honor, I do not believe that the final order of deportation or removal would interrupt the necessary period of illegal residence. It would not, okay. So you don't think that you can use the vehicle of habeas to challenge the terms and conditions of custody? The terms and conditions, yes, Your Honor. So wouldn't this conceivably have that effect? I don't believe this is the terms and conditions of custody. Were the plaintiff saying that because his application for asylum was denied, he was immediately placed in a pen with other people under unconstitutional conditions? Perhaps he could make an argument that way, if there were actually some showing that that decision imposed unlawful conditions. Well, isn't the argument here that basically that adjustment of status will alter the conditions upon which he could return to the United States? It's a different argument, but it's one that may be enough to give a jurisdictional toehold here. The argument is that the decision on adjustment of status could be used as a vehicle to attack the final order of removal, and if the petitioner could get rid of, moot, or change the final order of removal, then that would allow him to have different conditions to return to the government, to the United States. But in this case, even if he were to prevail on the legal argument that he's bringing before this Court on the illegal status as of January 1st, 1982, it still would not overcome all of the barriers necessary to have a legal basis upon which to actually obtain amnesty and then attempt to attack the final order of removal. So in this case, there are too many steps. There is no direct connection between what he is challenging legally here today and what he hopes to obtain. Under this type of argument, it could be brought to the point where a simple decision by an immigration agency to reject an application for untimeliness or because it was procedurally deficient, if it could eventually impact either a currently standing or future final order of removal, could be said to therefore create custody. I don't believe that there's been any cases that have accepted the impact on a final order of removal imposing custody as a basis for asserting habeas jurisdiction over some other type of decision by the government. In conclusion, Your Honors, this petitioner has been fighting the United States immigration system for over 20 years. He has filed application after application under legal theory after legal theory. The agencies that were granted the legal authority to review those applications, those legal theories, have reviewed them. They have rejected them on their merits. The district court properly found that it lacks the subject matter jurisdiction to review or to reverse the final legal effort by the petitioner to obtain legalization. Thank you. Thank you. The case is here to be submitted. And we'll proceed with argument on the next case, which is VHP Associates versus Clarks. Thank you. Thank you. Thank you.
judges: Canby, Rymer, Thomas